UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VENUS SPRINGS, | Case No. 11-13518 |
| Plaintiff, | Bernard A. Friedman |
| v. | United States District Judge |
| MAYER BROWN LLP, *et al.*, | Michael Hluchaniuk |
| Defendants. | United States Magistrate Judge |
| _____/ | |

**REPORT AND RECOMMENDATION
MOTIONS TO DISMISS COMPLAINT (Dkt. 27, 33)**

**I.     PROCEDURAL HISTORY**

Plaintiff, Venus Springs, brought this civil rights complaint against the U.S. Department of Treasury, Ally Financial Inc., and several employees of Ally, along with the law firm of Mayer Brown.  (Dkt. 1).  Plaintiff filed her second amended complaint on December 11, 2011.  (Dkt. 9).  Plaintiff asserts claims under 42 U.S.C. § 1981, the Equal Protection and Due Process Clauses of the Fifth Amendment, tortious interference, intentional infliction of emotional distress, and civil conspiracy.  According to plaintiff, Treasury is a proper defendant in this case based on its ownership interest in Ally (f/k/a GMAC) and Ally's receipt of funds under the Troubled Asset Relief Program (TARP).  In addition, plaintiff alleges that unnamed Treasury officials conspired with Ally employees to have

plaintiff fired.  (Dkt. 9).

This matter was referred to the undersigned for all pretrial proceedings on August 31, 2011.  (Dkt. 8).  District Judge Friedman entered an order granting plaintiff's motion to voluntarily dismiss Mayer Brown.  (Dkt. 36).  The Ally defendants filed a motion to dismiss the second amended complaint based on *res judicata* and collateral estoppel.  (Dkt. 27).  On May 29, 2012, plaintiff filed her response to the motion to dismiss.  The Ally defendants filed a reply on June 15, 2012 and a notice of the decision of the Fourth Circuit in a related case on October 11, 2012.  (Dkt. 38, 44).

On May 23, 2012, Treasury filed a motion to dismiss on the basis of sovereign immunity and failure to state a claim.  (Dkt. 33).  Plaintiff filed her response on June 12, 2012.  (Dkt. 37).  Treasury filed a reply in support of its motion on July 3, 2012.  (Dkt. 43).  These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

II.   FACTUAL BACKGROUND

Much of the factual background of this case is set out in the Order Granting Summary Judgment to Ally in the related case of *Springs v. Ally Financial, Inc.*,

Case No. 3:10-cv-311 (W.D. N.C. 2012), which can be found on the docket in this case at Dkt. 27-3.

      Defendant [Ally] hired Plaintiff to negotiate and assist negotiations with outside law firms, including Mayer Brown, in order to reduce Defendant's legal spending in October 2008. (Doc. No. 50-2: Plaintiff's Dep. at 7, 14-15, 19). When Plaintiff interviewed for her job with Defendant she failed to divulge that she was fired from Mayer Brown. (Doc. No. 50-2: Plaintiff Dep. at 22). Plaintiff admits that she was "forced to resign," but contends that this was not a "firing." (Doc. No. 57 at 1, 3). Plaintiff told Defendant that she voluntarily left Mayer Brown in search of a better work/life balance, (Doc. Nos. 50-2: Plaintiff Dep. at 22; 50-7 at 1; 50-8 at 1; 50-9 at 1). Plaintiff argues that she may have said this in relation to why she wanted to go in-house, rather than work for another firm. (Doc. No. 57 at 3). Plaintiff was then offered the position, contingent upon her passing a background check. (Doc. No. 50-8: Boque Declaration). But Plaintiff omitted that she ever worked for Mayer Brown on her background check form. (Doc. No. 8-1: Complaint at 60-61). Accordingly, the background check firm never inquired with Mayer Brown to find out what had actually happened. (Doc. No. 50-8: Boque Declaration).

      Shortly after starting work with Defendant, Plaintiff filed an EEOC discrimination charge against Mayer Brown. (Doc. No. 50-4). In April 2009, Plaintiff authored a document called "Mayer Brown LLP, Background for Negotiation" and took part in discussions regarding strategies for fee negotiations with Defendant's legal vendors, including Mayer Brown. (Doc. No. 50-2: Plaintiff's Dep. at 56-60). Plaintiff argues that this document was just one of fifty negotiation background reports she prepared and stresses that she was never tasked with directly contacting Mayer Brown. (Doc. No. 57 at 4). One month later, Plaintiff filed a lawsuit against the firm. (Doc. No. 50-2 at 64-70).

      Defendant's Conflict of Interest Policy requires employees to "[u]se the GMAC Conflict of Interest Questionnaire to notify leadership of any potential conflict–even if you think it probably isn't

3

a problem. Fully disclose any activity, investment, employment, or relationship that could create even the appearance of a possible conflict. . . Don't . . . [f]ail to notify leadership with full disclosure of any potential conflict." (Doc. No. 8-1 at 32). Defendant's Conflict of Interest Form further defines a conflict of interest to include "any activity or interest that could conflict with or appear to conflict with your responsibilities to GMAC." (Doc. No. 57-22 at 2). Plaintiff reviewed this policy when she began work. (Doc. No. 50-2 at 32).

Just before filing suit against Mayer Brown in May, Plaintiff reviewed Defendant's Conflict of Interest Policy again. (Doc. No. 50-2: Plaintiff's Dep. at 32-33). Plaintiff then conferred with her attorney about whether there was any possible conflict of interest. (Id. at 37). Plaintiff decided that she had no conflict and did not inform Defendant about her lawsuit, EEOC charge, or firing. (Id. at 37-38). In the event she was asked to directly negotiate with Mayer Brown, Plaintiff planned to ask another co-worker to handle the talks. (Id. at 31). Plaintiff now asserts that she took these actions because she believed that Defendant may try to discriminate against her and use a fabricated conflict of interest as pretext. (Doc. No. 50-2: Plaintiff's Dep. at 40-41).

In June, one of Defendant's in-house attorneys noticed an article about Plaintiff's suit against Mayer Brown on a website. (Doc. No. 50-8 at 2). The lawsuit revealed that Plaintiff had withheld the true reason she left Mayer Brown and that she was in an adversarial position with one of Defendant's largest legal vendors, whose fee Plaintiff was tasked with helping her superiors reduce. (Id.). Defendant began an investigation into a possible conflict of interest. (Id.). After two of Defendant's employees confronted Plaintiff about the conflict, Plaintiff asked Calvin Rose to assist in any negotiations with Mayer Brown "[i]n order to avoid any potential concerns by anyone regarding a conflict of interest." (Doc. No. 57-26).

After this investigation revealed the above facts, Defendant fired Plaintiff on July 10, 2009. (Id. at 3). Defendant informed Plaintiff that it was terminating her employment because of her "lack of integrity and misrepresentations to [Defendant] during the hiring process and her failure to disclose an actual, potential, or perceived

conflict of interest." (Doc. No. 50-5: Declaration of Kathleen Patterson at 2); see also (Doc. No. 50-2: Plaintiff Dep. at 52). Defendant did not have a specific discipline or termination policy at ths time. (Doc. No. 63-7 at 25-29).

Plaintiff presents evidence that another employee, Nita Gooding, harassed another African-American female employee, Monique Rue, in the summer of 2009. (Doc. No. 63-5). Ms. Rue sued Defendant for forcing her to resign, but the Court ultimately dismissed her claim for her failure to obey court orders or participate in discovery. (Case No. 3:10-cv-62, Doc. No. 40). Plaintiff presents the complaints in six other retaliation lawsuits filed against Defendant since 2007. (Doc. No. 63-4).

(*See* Order dated April 26, 2012, Dkt. 27-3). The district court granted summary judgment in Ally's favor on plaintiff's claims of racial discrimination and retaliation under Title VII and 42 U.S.C. § 1981, and the North Carolina Equal Employment Practices Act. *Id.* The court's decision was affirmed on appeal by the Fourth Circuit Court of Appeals on November 11, 2012. (Dkt. 44-1).

## III. ANALYSIS AND CONCLUSION

### A. Standard of Review

Although Rule 12(c) states that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment," courts have found that when the issue of *res judicata* is presented, it is "a purely legal issue" that can be considered in the context of a motion for judgment on the pleadings. *Booker v. City of Beachwood*, 2007 WL 1039155 (N.D. Ohio), citing *Hutcherson v. Lauderdale County, TN*, 326 F.3d 747,

756 (6th Cir. 2003). The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *EEOC v. J.H. Routh Packing Co.*, 246 F .3d 850, 851 (6th Cir. 2001) (citation omitted.). On a motion to dismiss, a court considering an affirmative defense of *res judicata*, as here, may take judicial notice of public records including judicial proceedings. *Automated Solutions Co. v. Paragon Data Systems, Inc.*, 2008 WL 2404972, *6 (N.D. Ohio 2008), citing *Day v. Moscow*, 955 F.2d 807, 811 (2nd Cir. 1992); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-427 (3d Cir. 1999); 2 Moore's Federal Practice § 12.34; *Rushford v. Firstar Bank, N.A.*, 50 Fed.Appx. 202, 205 (6th Cir. 2002).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007),

quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*, quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

  B. <u>The Ally Defendants</u>

    1. *Res judicata*/Collateral Estoppel

Because the judgment on which Ally relies for its preclusion argument was issued by a federal court, the Court looks to federal law to determine its preclusive effect. *Hamilton Bogarts, Inc v. State of Michigan*, 501 F.3d 644, 650 (6th Cir. 2007). The Sixth Circuit has described *res judicata* as "extinguish[ing] 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Walker v. General Tel. Co.*, 25 Fed.Appx. 332, 336 (6th Cir. 2001). The elements of *res judicata* are as follows:

> (1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims.

*Walker*, 25 Fed.Appx. at 336. In contrast, the application of the doctrine of collateral estoppel requires the following:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987). Collateral estoppel, or issue preclusion, rather than *res judicata*, or claim preclusion, is the appropriate doctrine in the circumstances presented here.

In this case, plaintiff brings causes of action under 42 U.S.C. § 1981, along with equal protection, and due process claims against individual employees of Ally, who were dismissed from the North Carolina suit based on lack of personal jurisdiction, and intentional infliction of emotional distress and civil conspiracy claims against Ally. Plaintiff attempts to avoid the strictures of *res judicata* and collateral estoppel by asserting different claims against Ally (intentional infliction of emotional distress and civil conspiracy) and proceeding under a modified

theory against the individual defendants (everything but Title VII).

It has been conclusively determined by Western District of North Carolina and the Fourth Circuit that plaintiff's Title VII and § 1981 claims failed. The court specifically concluded that plaintiff presented no proof that Ally's stated reason for terminating her was false. (Dkt. 27-3, Pg ID 292). Thus, plaintiff is precluded from litigating this issue in this case, regardless of the identity of the defendants. Indeed, plaintiff agrees that if on appeal, the Fourth Circuit affirms the lower court and certiorari is denied to the Supreme Court, then her § 1981 claim against the individuals will be precluded based on issue preclusion. However, the fact that the parties have appealed a district court's judgment does not deprive the judgment of *res judicata* effect; the undersigned fails to see how a potential grant of certiorari would affect the analysis. *See Smith v. Securities and Exchange Commission*, 129 F.3d 356, 362 n. 7 (6th Cir. 1997); 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4433 (2d ed. 2002). Thus, the § 1981 claims are plainly precluded based on plaintiff's concession.

In addition, plaintiff's claim of a "civil conspiracy" is also precluded because the North Carolina federal court concluded that her termination was lawful. Specifically, it found that Ally's stated reason for terminating plaintiff was proper and not a pretext for racial discrimination or retaliation. "A civil

conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Chambers v. Detroit*, 786 F. Supp. 23 1253, 1276 (E.D. Mich. 2011), quoting *Feaheny v. Caldwell*, 175 Mich.App. 291, 307 (1990). Plaintiff's complaint alleges that defendants conspired to "unlawfully terminate" her employment. The termination has been deemed lawful by the decisions of the Western District of North Carolina and the Fourth Circuit. Plaintiff fails to explain how she can overcome the determination of this issue.

      2.     Failure to state a claim.

Plaintiff contends, however, that her claims for tortious interference, due process, equal protection, and intentional infliction of emotional distress were not fully litigated and cannot be precluded. Defendant takes a different position, as does the undersigned, to a certain extent, explained below.

      a.     *Intentional Infliction of Emotional Distress*

To establish a claim for intentional infliction of emotional distress, the plaintiff must prove: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Duran v. The Detroit News, Inc.*, 200 Mich.App. at 629-30; 504 N.W.2d 715, citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602; 374 N.W.2d 905 (1985). "The trial court must determine as a matter of law whether the defendant's conduct was so

extreme and outrageous to withstand a motion for summary disposition." *Id*. Liability will only be found when the defendant's conduct is so outrageous and extreme that it goes beyond all bounds of decency and is "to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills*, 212 Mich.App. 73, 91; 536 N.W.2d 824 (1995), citing *Linebaugh v. Sheraton Mich. Corp.*, 198 Mich.App. 335, 342; 497 N.W.2d 585 (1993). The conduct must make the average member of the community exclaim "Outrageous!" when described to her. *Id*. Courts in this district have concluded that adverse employment actions such as substantial pay cuts, even if taken based on racial discrimination, are not sufficiently outrageous to sustain an intentional infliction of emotional distress claim. *Chambers v. City of Detroit*, 786 F.Supp.2d 1253, 1277 (E.D. Mich. 2011). In this case, the actions alleged (plaintiff's termination), particularly given the findings of the Western District of North Carolina that her termination was proper and not pretextual, are not sufficient to sustain this claim.

      b.  *Equal Protection and Due Process*

 Defendants assert that these claims must fail because they are not state actors and plaintiff's amended complaint does not sufficiently allege that they acted under color of state law. The undersigned agrees. Private entities can be held to constitutional standards when their actions "so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.

3d 821, 828 (6th Cir. 2000). For an action to be "fairly attributed" to the state it must be taken under color of state law and taken by a state actor. *Id*. The Sixth Circuit applies three tests to determine whether these conditions are met: (1) the "public function" test; (2) the "state compulsion" test; and (3) the "symbiotic relationship" or "nexus" test. *Id*. To meet the "public function" test, the private entity must exercise functions traditionally reserved to the state. *Id*. The public function test requires that "the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (internal citations omitted); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974) (holding that provision of utility service is not a power reserved exclusively to the state). "[T]he relevant question is not simply whether a private group is serving a 'public function.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 Instead, "the question is whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Id*. (citation omitted) (emphasis in original). There are no allegations that any of the defendants exercised such functions.

The "state compulsion" test requires that the state exercise such coercive power that the choice of the private actor is deemed to be that of the state. *Id*. Phrased another way, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such

significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). In this case, plaintiff merely alleges in paragraph 28 of the complaint that Treasury appointed officials to Ally's board who coerced and incited Ally to try to get plaintiff fired. (Dkt. 35, Pg ID 402). Paragraph 28 alleges that "[u]pon information and belief one of the Defendant US Government's government actors called or emailed the Defendant Solomon to discuss the Mayer Brown Complaint with him and encouraged him to get rid of the Plaintiff." (Dkt. 9, Pg ID 88). This vague allegation hardly demonstrates that anyone at Treasury exercised sufficient coercive power over Ally or its agents to satisfy the state compulsion test.

Finally, under the "nexus" test, the action of the private entity can constitute state action when there is a close nexus between the state and the alleged action so that the action itself can be attributed to the state. It is "well-established ... that neither public funding nor private use of public property is enough to establish a close nexus between state and private actors." *Lansing*, 202 F.3d at 830, citing as examples, *Rendell-Baker*, 457 U.S. at 840 (finding private school's personnel decisions not attributable to the state, despite the fact that "virtually all of the school's income was derived from government funding"); *Wolotsky*, 960 F.2d at 1336 (finding private not-for-profit corporation which derived "a significant portion of its funding from the government" and which leased one of its facilities

from the government at nominal cost was not a state actor). As an initial matter, there are no allegations at all that any of the individual defendants received any such federal funds. More importantly, the funding of Ally by the government just does not establish a close nexus between the government and her termination to meet the requirements of the nexus test. For these reasons, the undersigned concludes that plaintiff's Equal Protection and Due Process claims against the Ally defendants fail.

     c.  *Tortious Interference*

Tortious interference with an advantageous business relationship can be shown where (1) there is the existence of a valid business relationship or expectancy; (2) defendant had knowledge of the relationship; (3) defendant intentionally interfered with the relationship; and (4) damages resulted from the interference. *Chambers* at 1274, citing *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich.App. 83, 89 (2005). Furthermore, the interference "must be 'an act that is per se wrongful." *Id.* quoting *Feaheny v. Caldwell*, 175 Mich. App. 291 (Mich. 1990). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Id.* quoting *Mino v. Clio Sch. Dist.* 255 Mich. App. 60, 78 (2003) (citations omitted). According to defendant, because the North Carolina Court has already concluded that defendants' decision to terminate

plaintiff's employment was lawful and motivated by legitimate business reasons, plaintiff's claim for tortious interference must fail.

Defendant also argues that a company cannot tortiously interfere with itself; rather, the presence of a third party is required. *Reed v. Michigan Metro Girl Scout Council*, 201 Mich. App. 10, 13 (1993) (stating that [t]o maintain a cause of action for tortious interference, [a plaintiff] must establish that the defendant was a "third party" to the contract or business relationship"); *see also Chambers* at 1275 ("It is the interference of third parties, not the "fairness" of the employment decision that is actionable). Here, plaintiff specifically claims that the individual defendants, all of whom work or worked for Ally, sought to interfere with her employment relationship with defendant Ally. According to defendants, such allegations fail due to the lack of the requisite third party – the corporate entity and its employees are viewed as one. *Reed*, at 13 ("It is now settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation."); *see also Chambers*, at 1275; *Feaheny*, at 305-306.

In the view of the undersigned, even if plaintiff's tortious interference claims is not barred by the North Carolina decision, she fails to state a claim because Ally and its employees cannot interfere with their own contract or relationship. It is well-established that a claim for tortious interference with

contract cannot be brought against a party to the contract or an agent of a party to the contract. *Bailey v. Scoutware LLC*, 2012 WL 2711458 (E.D. Mich. 20120, citing *Reed v. Mich. Metro Girl Scout Council*, 201 Mich.App. 10; 506 N.W.2d 231, 233 (1993). Employees of a contracting party are agents of that party and, therefore, not "third-parties" for purposes of a tortious interference with a contract claim. *Id*. Plaintiff's amended complaint does not allege that the individual defendants' actions were purely for personal gain and with no benefit to the corporation. Thus, her claim for tortious interference fails.

C.  Treasury

Plaintiff brings several claims against Treasury. First, she brings claims under 42 U.S.C. § 1981 along with Equal Protection and Due Process claims. Second, plaintiff brings state law claims of intentional infliction of emotional distress, tortious interference with a business relationship, and civil conspiracy. Treasury argues that these claims are barred by the doctrine of sovereign immunity. Subsection (c) of § 1981 provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." By its terms, § 1981 is inapplicable to actions taken under color of federal law.[1] *Omeli v. National Council of Senior*

---

[1] Plaintiff relies on *Selden Apartments v. U.S. Dep't of Housing and Urban Development*, 785 F.2d 152 (6th Cir. 1986) to argue that her claims for equitable relief under § 1981 are not barred by sovereign immunity. Even if that is accurate, plaintiff does not explain

*Citizens*, 12 Fed.Appx. 304, 307 (6th Cir. 2001), cert. denied, 534 U.S. 1026 (2001); *see also Davis-Warren Auctioneers, J.V. v. Federal Deposit Ins. Corp.*, 215 F.3d 1159 (10th Cir. 2000); *Davis v. United States Dep't of Justice*, 204 F.3d 723, 725-26 (7th Cir. 2000) (*per curiam*); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998). Therefore, plaintiff's claims under § 1981 against Treasury fail.

In general, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Ghandi v. City of Detroit Police Dep't*, 747 F.2d 338, 342 (6th Cir. 1985), quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). This rule also applies to a suit against a federal agency since the United States is the real party in interest. *Id.* at 342-343, citing Wright, Miller & Cooper, Federal Practice and Procedure, § 3655 at 174 (1976); *City of Whittier v. United States Department of Justice*, 598 F.2d 561, 562 (9th Cir. 1979). Just as in *Ghandi*, plaintiff seeks to avoid the consequences of this rule by arguing that she seeks only equitable relief against Treasury. However, as explained in *Ghandi*, it is well-established that "unless sovereign immunity has been waived or does not apply, it bars equitable as well as legal remedies against the United States." *Ghandi*, 747 F.2d at 342, quoting *Jaffee v.*

---

why the all § 1981 claims against Treasury should not fail because § 1981 only applies to those acting "under color of State law."

*United States*, 592 F.2d 712, 717 n. 10. Thus, plaintiff can obtain injunctive relief against Treasury only if Congress waived the immunity by statute. Plaintiff cites no authority in her response to establish that such a waiver has been enacted by Congress. Therefore, her claims, whether for damages or equitable relief, are barred by sovereign immunity.

Notably, plaintiff does not bring a proper action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in which the Supreme Court stated this jurisdiction gave "federal courts ... the power to award damages for violation of 'constitutionally protected interests'", given that *Bivens* "recognizes that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227, 230 (6th Cir. 1985). Not only has plaintiff disclaimed in her response that she seeks damages from Treasury, it is well-established that *federal agencies*, as opposed to individual agents of the federal government, cannot be sued under *Bivens*. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). And, plaintiff does not claim to be bringing an action for non-monetary relief against a government agency under the Administrative Procedures Act. *See Ghandi*, 747 F.2d at 343. Thus, no basis for any waiver has been identified. For these reasons, all claims against Treasury should be dismissed based on sovereign

immunity.[2]

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

---

[2] Given this conclusion, the remaining grounds on which Treasury moved for dismissal need not be addressed.

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 31, 2013                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on <u>January 31, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Venus Y. Springs, Russell S. Linden, Laura A. Sagolla, Marlo J. Roebuck, Nicola Ai Ling Prall, and Richard S. McAtee</u>.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov