UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VENUS SPRINGS,

    Plaintiff,                                                   Civil Action No. 11-CV-13518

vs.                                                       HON. BERNARD A. FRIEDMAN

MAYER BROWN LLP,
THE UNITED STATES DEPARTMENT
OF TREASURY,
ALLY FINANCIAL, INC.,
AMY BOUQUE,
KATHLEEN PATTERSON,
YEQUIANG HE,
CYNTHIA DAUTRICH,
WILLIAM SOLOMON and
ROBERT NEATON,

    Defendants.
_____/

**OPINION AND ORDER ACCEPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is presently before the Court on two defense motions to dismiss [docket entries 27 and 33]. Magistrate Judge Michael Hluchaniuk's has submitted a Report and Recommendation ("R&R") in which he recommends that the Court grant both motions. Plaintiff has filed objections to the R&R and defendants have responded to plaintiff's objections. Under Fed. R. Civ. P. 72(b)(3), the Court reviews de novo those portions of the R&R to which specific, timely objections have been made.

The facts of the case are well summarized in the R&R and in related litigation in other courts. *See Springs v. Ally Fin., Inc.*, 2012 WL 260661 (W.D.N.C. Jan. 30, 2012) (granting summary judgment for defendant), *aff'd Springs v. Ally Fin., Inc.*, 475 F.App'x 900 (4th Cir. 2012). In both cases plaintiff alleges that her former employer, Ally Financial, Inc. ("Ally"), discharged her

and retaliated against her because of her race. In the North Carolina action, plaintiff sued Ally and four of its employees (Amy Bouque and Kathleen Patterson, Ally's human resources directors; Yequiang He, an Ally vice-president; and Cynthia Dautrich, Ally's chief procurement officer) for race discrimination and retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 1981 and a North Carolina anti-discrimination statute. The court in that case dismissed the complaint against the individual defendants for lack of personal jurisdiction, and it granted summary judgment for Ally on the grounds that "Plaintiff failed to present evidence that Defendant's stated reason for terminating her employment was pretext for either racial discrimination or illegal retaliation . . . ." 2012 WL 260661 at *10.[1] The Court of Appeals for the Fourth Circuit "affirm[]ed the judgment

---

[1] The court in the North Carolina action summarized the context of plaintiff's discharge, defendant's explanation therefor, plaintiff's claims and the basis for the court's ruling in favor of Ally as follows:

> Defendant hired Plaintiff to negotiate and assist negotiations with outside law firms, including Mayer Brown, in order to reduce Defendant's legal spending in October 2008. (Doc. No. 50–2: Plaintiff's Dep. at 7, 14–15, 19). When Plaintiff interviewed for her job with Defendant she failed to divulge that she was fired from Mayer Brown. (Doc. No. 50–2: Plaintiff Dep. at 22). Plaintiff admits that she was "forced to resign," but contends that this was not a "firing." (Doc. No. 57 at 1, 3). Plaintiff told Defendant that she voluntarily left Mayer Brown in search of a better work/life balance, (Doc. Nos. 50–2: Plaintiff Dep. at 22; 50–7 at 1; 50–8 at 1; 50–9 at 1). Plaintiff argues that she may have said this in relation to why she wanted to go in-house, rather than work for another firm. (Doc. No. 57 at 3). Plaintiff was then offered the position, contingent upon her passing a background check. (Doc. No. 50–8: Boque Declaration). But Plaintiff omitted that she ever worked for Mayer Brown on her background check form. (Doc. No. 8–1: Complaint at 60–61). Accordingly, the background check firm never inquired with Mayer Brown to find out what had actually happened. (Doc. No. 50–8: Boque Declaration).
> Shortly after starting work with Defendant, Plaintiff filed an EEOC discrimination charge against Mayer Brown. (Doc. No. 50–4).

In April 2009, Plaintiff authored a document called "Mayer Brown LLP, Background for Negotiation" and took part in discussions regarding strategies for fee negotiations with Defendant's legal vendors, including Mayer Brown. (Doc. No. 50–2: Plaintiff's Dep. at 56–60). Plaintiff argues that this document was just one of fifty negotiation background reports she prepared and stresses that she was never tasked with directly contacting Mayer Brown. (Doc. No. 57 at 4). One month later, Plaintiff filed a lawsuit against the firm. (Doc. No. 50–2 at 64–70).

Defendant's Conflict of Interest Policy requires employees to "[u]se the GMAC Conflict of Interest Questionnaire to notify leadership of any potential conflict-even if you think it probably isn't a problem. Fully disclose any activity, investment, employment, or relationship that could create even the appearance of a possible conflict ... Don't ... [f]ail to notify leadership with full disclosure of any potential conflict." (Doc. No. 8–1 at 32). Defendant's Conflict of Interest Form further defines a conflict of interest to include "any activity or interest that could conflict with or appear to conflict with your responsibilities to GMAC." (Doc. No. 57–22 at 2). Plaintiff reviewed this policy when she began work. (Doc. No. 50–2 at 32).

Just before filing suit against Mayer Brown in May, Plaintiff reviewed Defendant's Conflict of Interest Policy again. (Doc. No. 50–2: Plaintiff's Dep. at 32–33). Plaintiff then conferred with her attorney about whether there was any possible conflict of interest. ( Id. at 37). Plaintiff decided that she had no conflict and did not inform Defendant about her lawsuit, EEOC charge, or firing. ( Id. at 37–38). In the event she was asked to directly negotiate with Mayer Brown, Plaintiff planned to ask another co-worker to handle the talks. ( Id. at 31). Plaintiff now asserts that she took these actions because she believed that Defendant may try to discriminate against her and use a fabricated conflict of interest as pretext. (Doc. No. 50–2: Plaintiff's Dep. at 40–41).

In June, one of Defendant's in-house attorneys noticed an article about Plaintiff's suit against Mayer Brown on a website. (Doc. No. 50–8 at 2). The lawsuit revealed that Plaintiff had withheld the true reason she left Mayer Brown and that she was in an adversarial position with one of Defendant's largest legal vendors, whose fee Plaintiff was tasked with helping her superiors reduce. ( Id.). Defendant began an investigation into a possible conflict of interest. ( Id.). After two of Defendant's employees confronted Plaintiff about the conflict, Plaintiff asked Calvin Rose to assist in any negotiations with Mayer Brown "[i]n order to avoid any potential concerns by

3

below on the reasoning of the district court as stated in its January 30, 2012 order." 475 F.App'x

> anyone regarding a conflict of interest." (Doc. No. 57–26).
> After this investigation revealed the above facts, Defendant fired Plaintiff on July 10, 2009. ( Id. at 3). Defendant informed Plaintiff that it was terminating her employment because of her "lack of integrity and misrepresentations to [Defendant] during the hiring process and her failure to disclose an actual, potential, or perceived conflict of interest." (Doc. No. 50–5: Declaration of Kathleen Patterson at 2); see also (Doc. No. 50–2: Plaintiff Dep. at 52). Defendant did not have a specific discipline or termination policy at ths time. (Doc. No. 63–7 at 25–29).
>
> \* \* \*
>
> Plaintiff has not presented any other proof that Defendant's stated reason for terminating her was false. Summary judgment is appropriate where Plaintiff cannot put forward admissible evidence of pretext. *King*, 328 F.3d at 154. Plaintiff's claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and North Carolina state law are all DISMISSED.
>
> \* \* \*
>
> As also discussed above, Plaintiff has failed to show that Defendant's stated reasons were pretext. *See Dennis*, 290 F.3d at 646. The temporal proximity alone is insufficient to satisfy this prong of the *McDonnell Douglas* inquiry. *See King*, 328 F.3d at 154 (affirming summary judgment despite such close timing between protected activity and termination to satisfy prima facie causation requirement). Thus, Plaintiff's claims of illegal retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 are DISMISSED.
>
> \* \* \*
>
> Plaintiff failed to present evidence that Defendant's stated reason for terminating her employment was pretext for either racial discrimination or illegal retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and North Carolina state law. These claims are DISMISSED.

2012 WL 260661, at \*\*1-2, 8-10.

at 900.

In the present case, plaintiff is again suing Ally and the four individual defendants she named in the North Carolina action, as well as two additional Ally employees (William Solomon, Ally's general counsel; and Neaton Robert, an Ally employee) and the United States Department of Treasury.[2] Plaintiff asserts six claims. In Count I she claims that all of the defendants except Ally violated her rights under 42 U.S.C. § 1981 by participating in and/or approving of Ally's decision to discharge her, and that they "humiliate[d]" her and retaliated against her after she was discharged. Second Am. Compl. ¶ 52, 54, 56, 57. In Count II plaintiff claims that all of the defendants except Mayer Brown violated her rights under the Equal Protection Clause of the Fifth Amendment by discriminating against her based on her race. In Count III plaintiff claims that all of the defendants except Mayer Brown violated her rights under the Due Process Clause of the Fifth Amendment by depriving her "of her constitutionally protected property interest in continued employment [with Ally] absent proper notice and a pretermination hearing . . . ." *Id.* ¶ 73. In Count IV plaintiff claims that all of the defendants engaged in a civil conspiracy to terminate her employment with Ally unlawfully. In Count V plaintiff claims that all of the defendants intentionally inflicted her with emotional distress by "participat[ing] in the decision to terminate" her employment with Ally. *Id.* ¶ 88. And in Count VI plaintiff claims that all of the defendants except Ally and the Department of Treasury tortiously interfered with her "advantageous business relationship and expectancy with Defendant Ally" and, as a result, Ally discharged her. *Id.* ¶¶ 94, 98.

---

[2] Plaintiff also named Mayer Brown, but she later stipulated to the dismissal of her complaint as to this defendant with prejudice. *See* docket entry 32.

The magistrate judge recommends that the Court grant the motion of defendants Ally, Bouque, Patterson, He, Dautrich, Solomon and Neaton ("the Ally defendants") to dismiss on the grounds that plaintiff's discrimination and civil conspiracy claims are barred by collateral estoppel; plaintiff has failed to state claims for intentional infliction of emotional distress or tortious interference; and defendants are not state actors and therefore cannot be liable for the alleged constitutional violations. The magistrate judge recommends that the Court grant the motion of defendant Department of Treasury to dismiss largely on grounds of sovereign immunity.

Plaintiff first objects to the magistrate judge's use of "hearsay" by "past[ing] the findings of fact from the NCWD opinion . . . ." Pl.'s Obj. at 5. The Court rejects this objection. The court's finding in the North Carolina action, i.e., that Ally was entitled to summary judgment on plaintiff's Title VII and § 1981 discrimination and retaliation claims because plaintiff did not successfully rebut Ally's legitimate, nondiscriminatory explanation for discharging her, is not "hearsay," but rather a binding and final determination of a factual issue that was fully litigated in that case and was necessary to that court's judgment. Plaintiff is bound by this findings and may not relitigate it. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *NAACP. v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330-31 (6th Cir. 1987); *Golliday v. JPMorgan Chase Bank*, 2013 WL 126215, at *3 (W.D. Mich. Jan. 9, 2013). Plaintiff's citation to *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir. 2001), *U.S. v. DeSantis*, 134 F.3d 760 (6th Cir. 1998), and *Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993), is inapposite, as these cases did not involve the application of collateral estoppel.[3]

---

[3] All of plaintiff's claims against Ally, i.e., Counts II, III, IV and V, are also barred by res judicata, as these claims could have been raised in the prior action. *See, e.g., Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

Plaintiff next objects to the recommended dismissal of her § 1981 claim because "the claim is sufficiently stated to put the defendants on proper notice of my claim." Pl.'s Obj. at 7. The Court rejects this objection. The magistrate judge did not indicate that plaintiff's § 1981 claim is insufficiently pled. Rather, he clearly and correctly suggested that this claim should be dismissed because it cannot be maintained in light of the court's finding in the North Carolina action that plaintiff was discharged for a legitimate, nondiscriminatory reason – namely, because she failed to disclose to Ally an obvious conflict of interest vis-a-vis Mayer Brown and, despite knowing of the conflict, performed work for Ally involving this vendor. Plaintiff's § 1981 claim, which is directed at all of the defendants except Ally, is that defendants conspired with Ally and one another to discharge and retaliate against her for racially discriminatory reasons. This claim simply cannot stand because the prior finding that Ally's discharge of plaintiff was *not* racially discriminatory or retaliatory collaterally estops plaintiff from establishing a necessary element of the claim. In her response to the Ally defendants' motion to dismiss, plaintiff herself appeared to acknowledge that this claim would be barred by collateral estoppel if – as has occurred in the interim – the district court's grant of summary judgment were to be affirmed. *See* Pl.'s Resp. [docket entry 35] at 10-11.

Plaintiff next objects to the magistrate judge's conclusion that her civil conspiracy claim is barred by collateral estoppel. Plaintiff argues, in essence, that her failure to prove racial discrimination in the North Carolina action does not prevent her from claiming in the present case that defendants' discrimination and retaliation against her were "unlawful" in other ways. The Court rejects this objection. As the magistrate judge correctly noted, in Michigan a civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Feaheny v. Caldwell*,

7

175 Mich. App. 291, 307 (1989). *See also Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000) ("A civil conspiracy is an agreement between two or more persons to injure another by unlawful action."). The only "unlawfulness" alleged in support of plaintiff's civil conspiracy claim is that defendants sought to "unlawfully terminate Plaintiff's employment," Second Am. Compl. ¶¶ 83-85, and the termination was allegedly unlawful because it was done for racially discriminatory reasons. *See id.* ¶¶ 50, 54, 55, 62, 63, 66-68. The prior finding that Ally discharged plaintiff for a legitimate (i.e., lawful) and nondiscriminatory reason makes it impossible for plaintiff to pursue this claim.

Plaintiff next objects to the magistrate judge's conclusion that she failed to state a claim for intentional infliction of emotional distress. Plaintiff argues that she has stated such a claim. The Court rejects this objection. The elements of this tort are

> (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff. Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Walsh v. Taylor*, 263 Mich. App. 618, 634 (2004) (citations and internal quotations omitted). The magistrate judge noted that adverse employment action generally does not suffice to support a claim for intentional infliction of emotional distress, and that in the present case plaintiff's claim is eviscerated by the court's finding in the North Carolina action that Ally discharged plaintiff for a legitimate, nondiscriminatory reason.

In her objections, plaintiff argues this claim is not based only on her termination but also "on post retaliatory acts in my complaint and the assault and intimidation involved in the investigation." Pl.'s Obj. at 11. As pled, this claim relies mainly on defendants' alleged "role and

8

participation in the decision to terminate Springs," Second Am. Compl. ¶ 88, and the Court agrees with the magistrate judge that this is not "outrageous" and "atrocious" conduct, particularly in light of the reason Ally discharged plaintiff, as found in the North Carolina action. Plaintiff directs the Court's attention to defendants' other actions, as alleged in ¶¶ 31-41 of the Second Amended Complaint, but these, like the discharge decision itself, are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Walsh, supra.* Plaintiff alleges she was intimidated when questioned about the conflict of interest issue "behind closed doors in a poorly lit room with no windows by a man (Blasingame) of intimidating size who . . . greeted her by saying 'How the hell are you,'" . . . and that after the interrogation she "cried uncontrollably and was inconsolable." Second Am. Compl. ¶¶ 34, 41. Such conduct does not support an emotional distress claim.

Plaintiff next objects to the magistrate judge's conclusion that the Ally defendants are not state actors and therefore cannot be liable for violating plaintiff's equal protection and due process rights. Plaintiff argues Ally "is effectively a government entity in the same manner as a government agency because it is a government controlled corporation." Pl.'s Obj. at 13. The Court rejects this objection. While plaintiff alleges that the federal government loaned money to or invested in Ally through the Troubled Asset Relief Program ("TARP") in 2008 and 2009 and that it "hired various personnel to manage and control the Defendant Ally including, without limitation, at least two members of the board of directors," Second Am. Compl. ¶¶ 5-6, she has failed to show that the relationship between Ally and the government is close enough under the applicable tests, *see* R&R at 11-14, to permit a finding that the Ally defendants are state actors. If plaintiff's

argument were accepted, any entity receiving government funding or investment would be deemed a state actor. The analysis is more sophisticated than this. Plaintiff's comparison of Ally, which received a TARP "bailout," to Amtrak, a "corporation[] created and participated in by the United States for the achievement of governmental objectives," *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 386 (1995), is unpersuasive in the extreme. The Ally defendants are not state actors and the magistrate judge properly recommended the dismissal of plaintiff's constitutional claims as against these defendants for this reason.

Plaintiff next objects to the magistrate judge's conclusion that her tortious interference claim should be dismissed. While plaintiff says she objects, she does not challenge the magistrate judge's statement that "[e]mployees of a contracting party are agents of that party and, therefore, not 'third-parties' for purposes of a tortious interference with a contract claim." R&R at 16. The Court agrees with the magistrate judge. This claim is asserted against the individual defendants, all of whom are agents of Ally. As the court noted in *Bailey v. Scoutware LLC*, 2012 WL 2711458, at *7 (E.D. Mich. July 9, 2012), "[a] claim for tortious interference with contract cannot be brought against a party to the contract or an agent of a party to the contract." *Accord Grand Valley Health Corp. v. Ethospartners Healthcare Mgmt. Group, Inc.*, 2011 WL 255344, at *1 (Mich. App. Jan. 27, 2011); *Reed v. Mich. Metro Girl Scout Council*, 201 Mich. App. 10, 13 (1993). Therefore, plaintiff cannot claim that Ally's agents interfered with her employment relationship with Ally.

Finally, plaintiff objects to the magistrate judge's conclusion that the complaint should be dismissed as to defendant Department of Treasury. The gist of plaintiff's objection is that the government is not immune to the extent she seeks only equitable relief.

Regardless of immunity, most of plaintiff's claims fail as against the Department of Treasury for the reasons discussed above. Counts I, II and IV (the race discrimination and conspiracy claims) fail because plaintiff is collaterally estopped from relitigating the reason for her discharge. Count V (the emotional distress claim) fails because none of the conduct alleged by plaintiff is sufficiently "outrageous" to state a claim. And Count VI (the tortious interference claim) is not asserted against the Department of Treasury. Additionally, Count I (the §1981 claim) cannot be asserted against the federal government, or against its agencies or officers, because this statute prohibits discrimination and impairment of equal rights "under color of State law." *See, e.g., Omeli v. Nat'l Council of Senior Citizens*, 12 F.App'x 304, 307 (6th Cir. 2001); *Lee v. Hughes*, 145 F.3d 1272, 1277 & n.5 (11th Cir. 1998). Plaintiff's tort claims can be asserted against this defendant, if at all, only under the Federal Tort Claims Act, and plaintiff indicates she is not invoking this statute. *See* Pl.'s Obj. at 19.

This leaves Count III (denial of due process) as the only remaining claim against the Department of Treasury. As noted, plaintiff indicates she is seeking only equitable relief as to this defendant. The equitable relief sought in the complaint is "[a]n order . . . placing Plaintiff in the same position she would have been [in] had there been no wrongdoing by Defendants," i.e., reinstatement, and "[a]n injunction . . . prohibiting any further acts of discrimination or retaliation." Second Am. Compl. at 19.

Even assuming the claim for such relief is not barred by sovereign immunity, *see Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 343 (6th Cir. 1984) ("Congress [has] amended section 702 of the Administrative Procedure Act to allow actions seeking non-monetary relief against government agencies if the agency conduct is otherwise subject to review"), plaintiff

11

has failed to allege facts or show that either an order of reinstatement or the requested injunction could be issued against defendant Department of Treasury. In *Ghandi* the court noted that notwithstanding the waiver of immunity under the APA, a district court may "dismiss any action or deny relief on any other appropriate legal or equitable ground." *Id.* In the present case, plaintiff's former employer is Ally and only Ally could reinstate plaintiff to the position from which she was discharged. Ordering the Department of Treasury to do so would be nonsensical. As for the requested injunction, it would be appropriate only if necessary to protect plaintiff from again being subjected by this defendant to the deprivation of property without due process, and plaintiff makes no such allegation. *See Ghandi*, 747 F.2d at 343-44 (affirming the dismissal of plaintiff's claims against the federal agency because plaintiff did not demonstrate a substantial risk of imminent harm); *Miller v. F.B.I.*, 1998 WL 385895, at *2 (6th Cir. July 1, 1998) (affirming denial of injunctive relief as moot).

For all of the reasons stated above, the Court rejects plaintiff's objections to the magistrate judge's R&R. Accordingly,

IT IS ORDERED that Magistrate Judge Hluchaniuk's Report and Recommendation is hereby accepted and adopted as the findings and conclusions of the Court.

IT IS FURTHER ORDERED that the Ally defendants' motion to dismiss [docket entry 27] is granted.

IT IS FURTHER ORDERED that defendant Department of Treasury's motion to dismiss [docket entry 33] is granted.

                                                _s/ Bernard A. Friedman_____
                                                BERNARD A. FRIEDMAN
                                                SENIOR UNITED STATES DISTRICT JUDGE

Dated: March 18, 2013
       Detroit, Michigan